UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| RONALD LAWRENCE MORTENSEN,<br>Petitioner,<br>vs.<br>DWIGHT D. NEVEN, *et al.*,<br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>/ | 2:11-CV-00266-KJD-CWH<br><br>**ORDER** |

This action is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by petitioner Ronald Mortensen, a Nevada prisoner, who is proceeding with the assistance of counsel. Before the Court is respondents' motion to dismiss (ECF No. 50) and petitioner's response (ECF No. 55). Respondents did not file a reply.

## I. Background and Procedural History

On December 27, 1996, petitioner, a former Las Vegas Nevada police officer, celebrated his 31st birthday with friends at a local bar.[1] When the party broke up around midnight, petitioner and a fellow police officer, Christopher Brady, parted company with petitioner's wife and proceeded in Brady's 1974 Dodge pickup truck to 537 McKeller Circle, in an area in the city known for gang activity. Brady drove the vehicle and petitioner rode in the passenger seat. Petitioner had his off-duty weapon, a .380 Sig Sauer pistol, with him. Brady stopped the truck with the passenger side facing a group that was gathered

[1] This summary of facts is taken from the First Amended Petition (ECF No. 17). It is not intended as a finding by the Court, but merely offered as background information.

at the location. According to witnesses, a handgun appeared in the passenger's window and six shots were fired. Daniel Mendoza, one of the group gathered in the area, was killed by the gunfire. Thereafter, petitioner and Brady proceeded to another drinking establishment frequented by off-duty police officers. Later, Brady drove petitioner home.

The next morning, Brady discovered petitioner's gun in the pickup. He removed the bullets from the magazine and chamber, placed the gun in a bathroom cabinet and went fishing. The next day, Brady, accompanied by his police officer father, drove to the police station and Brady gave a statement which identified petitioner as the shooter.

Petitioner was charged on January 17, 1997, by way of Indictment in the Eighth Judicial District Court for Clark County in case number C140608, with murder with the use of a deadly weapon (open murder). Ex. 1- 4.[2] The indictment was later amended to include an alternative theory of murder in the second degree. Ex. 3-64. Following a jury trial, petitioner was found guilty of first degree murder with the use of a deadly weapon. Ex. 4-84. Petitioner was sentenced by the jury to two consecutive terms of life without the possibility of parole. Ex. 4-90. The judgment of conviction was entered on July 28, 1997. Ex. 5-108. Petitioner's first motion for a new trial based on newly discovered evidence was denied on July 28, 1997. Ex. 5-111.

Petitioner appealed his conviction and the denial of his motion for new trial on August 4, 1997. Ex. 5-112. Petitioner raised four grounds for relief in this Nevada Supreme Court case assigned number 30855. The claims raised were:

> 1. By ruling that Mortensen could not cross-examine Brady concerning his numerous incidents of excessive force, the trial court denied Mortensen a meaningful opportunity to establish Brady's guilt and, in

---

[2] The exhibits cited in this order in the form "Ex. __-__" are those filed by petitioner in support of his First Amended Petition, and are located in the record at ECF Nos. 18-44. The first number identifies the volume number and the second identified the tab number as listed on petitioner's Master Index of Documents Received From the State District Court and Nevada Supreme Court found at ECF No. 18. The reader is directed to the Master Index of Documents for actual page numbers. Respondents have submitted exhibits in support of the motion to dismiss which are identified as "Res. Ex. ___" and are found in the Court's record at ECF No. 56.

> doing so, denied him his Sixth Amendment right to confrontation and his Fourteenth Amendment right to due process.
>
> 2. The opinion testimony of Torrey Johnson to the effect that the vehicle from which shots were fired was, in all probability, moving was without foundation, constitutionally prejudicial, and otherwise inadmissible.
>
> 3. By having refused multiple defense efforts to obtain and examine Brady's truck and clothing and by having specifically disregarded a Justice Court directive to preserve these items, the State did deny Mortensen his due process rights under the Fourteenth Amendment and an opportunity to establish his innocence.
>
> 4. The court erred in failing to order a new trial on the basis of newly discovered evidence. After the trial, Carye Morris, a young girl who alleges that Christopher Brady forced her to commit a sex act upon him when he arrested her, stated that Brady told her he was "evil."

Res. Ex. 4, pp. i-ii (ECF No. 56-1, pp. 31-32).

Petitioner also filed a second motion for new trial, (ex. 18-148), which the state opposed (ex. 18-150). Following an evidentiary hearing (exs. 18-165, 169), the second motion for new trial based on additional newly discovered evidence was denied (ex. 18-170) and petitioner filed an appeal of this decision in the Nevada Supreme Court on November 3, 1998 (ex. 18-173). The case was assigned number 33293. Petitioner raised two grounds for relief in this appeal.

> 1. That Christopher Brady, the man whom Mortensen has always alleged shot Daniel Mendoza, did, prior to the shooting, describe himself as "evil" to other officers, the same word Mortensen testified Brady used to describe himself immediately after Brady shot Daniel Mendoza; and that Chris Brady told Marc Barry, another police officer, on as many as six occasions before the Mendoza shooting, that Brady wanted to do a "drive-by" shooting.
>
> 2. That an expert witness prepared relevant notes of his impressions, which notes were provided to the State but were withheld from Mortensen; that the impressions reflected on the withheld notes were exculpatory; and that the expert witness, with complete disregard for the scientific method, allowed the conclusions which he intended to offer to dictate what the relevant facts were?

Ex. 19-183, p. 2863. The appeals in case number 30855 and number 33293 where ultimately decided in a consolidated opinion issued by the Nevada Supreme Court on September 27, 1999, as amended on October 14, 1999.[3] Ex. 20-206, *see also* ex. 10-207. A petition for rehearing was denied on December 27, 1999. Ex. 20-215.

Meanwhile, a third motion for new trial was filed on May 6, 1999, alleging additional newly discovered evidence. Ex. 19-193. This motion was denied following a hearing (ex. 20-201) in Findings of Fact, Conclusions of Law and Order filed on December 8, 1999 (ex. 20-210). Petitioner appealed this order to the Nevada Supreme Court. Case number 35316 was assigned to this appeal. Exs. 20-212 and 20-211. This single issue raised in this appeal questioned

> [w]hether newly discovered evidence that Ramon Ramirez, the principal eyewitness to testify against Mortensen at trial, was actively involved in a methamphetamine distribution ring at the time of the shooting and at the time of the trial, and may have been armed at the time of the shooting, was so significant as to warrant a new trial.

Ex. 20-224, p. 1. An Order of Affirmance was entered denying the appeal on October 5, 2001. Ex. 22-253. Remittitur issued on November 2, 2001. Ex. 22-256.

On December 13, 2000, while this third motion for new trial was still pending, petitioner filed a state post-conviction petition. Ex. 22-240. After further investigation, a supplemental petition was filed on February 11, 2004. Ex. 23-276. An evidentiary hearing was commenced on July 19, 2007. Exs. 25-345-348, 357. The petition was denied in an order entered April 23, 2008. Ex. 26-368. Petitioner appealed (ex. 26-370, 384), raising the following grounds for relief:

> 1. The district [court] abused its discretion in limiting the evidentiary hearing on petitioner's claims of ineffective assistance of counsel thereby depriving him of due process under the Fourteenth Amendment and of the ability to conclusively establish a violation of the Sixth Amendment right to effective assistance of counsel.
>
> 2. Petitioner's conviction and sentence are invalid under the state and federal guarantee of effective assistance of counsel, due process of law,

---

[3] The record and documents provided by the parties do not indicate when the appeals were consolidated. Although petitioner had sought such (ex. 19-187); his request was denied (ex. 19-188).

> equal protection of the laws, cross examination and confrontation and a reliable sentence due to the failure of trial counsel to provide reasonably effective assistance of counsel. United States Constitution Amendments 5, 6, 8, and 14; Nevada Constitution Article I, sections 3, 6 and 8; Article IV, section 21.
>
> 3. Petitioner's conviction and sentence are invalid under the state and federal constitutional guarantee of due process, equal protection of the laws, effective assistance of counsel and reliable sentence because petitioner was not afforded effective assistance of counsel on direct appeal. United States Constitution Amendments 5, 6, 8, and 14; Nevada Constitution Article I, sections 3,6 and 8; Article IV, section 21.
>
> 4. The jury instruction given in this case defining premeditation and deliberation necessary for first degree murder as "instantaneous as successive thoughts of the mind" violated the constitutional guarantees of due process and equal protection, was vague and relieved the State of it's burden of proof on every element of the crime and mandates reversal of the conviction.
>
> 5. Failure to provide discovery of impeachment and exculpatory evidence by various law enforcement agencies violated petitioner's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and right to a fundamentally fair trial.
>
> 6. Cumulative errors throughout the course of the proceedings have acted to deny petitioner of due process of law and a fundamentally fair trial under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of Nevada.

Res. Ex. 1.

The Nevada Supreme Court entered an Order of Affirmance in case number 52648 on July 15, 2010 (ex. 26-395). Petitioner's motion for rehearing and motion for *en banc* reconsideration were denied (exs. 26-397 and 26-399). Remittitur issued in this case on December 21, 2010 (ex. 26-401). Petitioner commenced these federal proceedings on February 17, 2011, and respondents have moved to dismiss.

## II. The Federal Petition

In the first amended petition presented to this Court, petitioner raises a total of thirteen enumerated claims, including:

**Ground One**: Ineffective Assistance of Trial Counsel in violation of his Fifth, Sixth, Eighth and Fourteenth Amendment rights.

I. Pretrial Deficiencies[4]

A. Counsel failed to engage expert witnesses, including (1) an eyewitness testimony expert, (2) an expert in police procedures, (3) an expert in lighting and reconstruction of lighting conditions, (4) a ballistics and trajectory expert, (5) a gang expert, and (6) a forensic pathologist.

B. Counsel failed to obtain video tapes from locations visited by petitioner and Brady and interview witnesses to establish Brady wore glasses on the evening of the shooting.

C. Counsel failed to challenge pretrial identification of petitioner as suggestive.

D. Counsel failed to subpoena FBI documents and discovery.

E. Counsel failed to conduct a thorough background investigation of eye witnesses.

F. Counsel failed to file necessary pretrial motions: e.g., for discovery, for change of venue, to sequester jury and to dismiss for loss or destruction of exculpatory evidence.

G. Counsel failed to subpoena LVMPD records regarding criminal activity at the shooting location.

H. Counsel was negligent in recommending hiring an investigation firm that had a conflict of interest due to prior work with the LVMPD, leading to a loss of the investigator at a critical stage of case.

I. Counsel failed to investigate Brady's involvement with the [LVMPD] "bike team" and his familiarity with the location of the shooting and his "poaching" or "fishing" trips into the area.

J. Counsel failed to investigate Brady's background for purposes of impeaching his testimony.

K. Counsel failed to investigate and establish at trial the LVMPD's maintenance of a coercive presence at the location

[4] These subclaims are set forth in summary form and do not reflect the full content of the claims as argued in the petition.

of the shooting in order to pressure residents to testify against petitioner.

L. Counsel failed to prepare character witnesses for trial.

M. Counsel failed to delay the trial to allow adequate time to prepare and investigate.

N. Counsel failed to prepare petitioner's wife to testify at trial.

O. Counsel did not conduct simulations of the shooting in sufficient time to allow a proper defense presentation.

P. Counsel failed to investigate petitioner's alleged prior bad acts at Dillards, in order to "repel the misrepresentations made by the prosecutor."

II. Trial Deficiencies

Petitioner alleges that counsel was ineffective during trial.

A. Counsel failed to cross-examine Brady to establish he lied about events on the evening of the shooting.

B. Counsel failed to cross-examine eyewitnesses to establish their inability to make a valid identification of petitioner and to establish their bias against police for purposes of impeachment.

C. Counsel allowed the jury to view the crime scene after its conditions had been drastically improved or changed.

D. Counsel failed to present evidence or testimony to establish Brady's familiarity with the area.

E. Counsel failed to argue that the circumstances of the shooting failed to meet the elements of first degree murder and did not offer a proper jury instruction defining those elements.

F. Counsel failed to impeach Brady's testimony regarding a shoulder holster that he testified he wore on the night of the shooting, despite being advised of this inaccuracy by petitioner.

G. Counsel failed to present testimony that the witnesses were fearful to talk to defense investigators.

H. Counsel failed to establish that the glasses worn by the shooter, as described by the eyewitnesses, were not similar to the glasses worn by petitioner.

I. Counsel failed to object to prosecutorial misconduct during closing arguments.

J. Counsel failed to object to the use of a demonstration weapon embellished with swastikas on the grips.

K. Counsel failed to establish that petitioner did not always wear his glasses and they did not match the eyewitness description given at trial.

L. Counsel failed to offer jury instructions regarding mere presence, regarding eyewitness identifications, regarding the credibility of drug users or addicts, regarding intoxication to negate elements of a crime or defining premeditation and deliberation.

M. Counsel failed to call character witnesses despite their availability.

N. Counsel failed to offer evidence that releasing Brady's vehicle within 48 hours violated LVMDP policy.

O. Counsel failed to move to disqualify improperly influenced jurors.

P. Counsel failed to offer testimony of comments that one of the line-up participants looked like Brady made during the physical line-up identification of petitioner.

Q. Counsel failed to cross examine Daniel Ford about changes in the truck window tinting and the obstruction the tinting would have caused to an observer, which would have prevented petitioner from seeing anyone standing in the crime scene area, keeping him from directing Brady down the alley.

R. Counsel failed to object to improper and prejudicial closing argument by the state and failed to preserve for appeal the prosecutor's misstatement of law regarding the death penalty and his urging the jury to sentence on extraneous factors.

S. Counsel failed to object to improper comments by the prosecutor during his opening statement when he expressed his personal opinion, vouched for witnesses, misstated evidence to come and called petitioner a rogue cop with a gun.

T. Counsel failed to object to prosecutorial misconduct in instances of improper closing argument where the state argued victim impact, expressed personal opinion, referred to facts not in evidence, referred to petitioner as having an obsession with firearms and the crime as a thrill killing, disparaged defense

witnesses and commented on petitioner's right to remain silent.

U. Four witnesses for the state were not cross-examined on their ability to see into the truck because of the headlights.

V. Counsel failed to cross-examine the state's autopsy pathologist about stippling, tattooing or gunshot residue on the victim's clothing and body, or the size of the bullet wound to establish that the fatal shot was not fired from petitioner's gun.

W. Counsel failed to establish that Brady was petitioner's supervisor and the chain of command policies would have required petitioner to report the incident to Brady.

X. Counsel did not present testimony showing Brady was familiar with the "18th St. gang."

Y. Counsel failed to ask any questions on redirect examination of petitioner to rebut issues raised on cross-examination or call additional witnesses to corroborate his testimony.

Z. Counsel failed to move for a mistrial after the prosecutor mentioned petitioner's employment at Dillard's department store.

AA. Counsel waived petitioner's presence at the in-chambers discussion of the jury view of the scene and failed to make a record of the conditions of the viewing and waived petitioner's presence at an in-chambers argument about bad act evidence against Brady.

BB. Counsel failed to object to improper cross-examination commenting on petitioner's right to remain silent.

CC. Counsel failed to present testimony that Brady had altered his appearance for trial to look darker by using tanning or tanning products.

**Ground Two**: Ineffective assistance of appellate counsel in violation of petitioner's Fifth, Sixth, Eighth and Fourteenth Amendment rights.

A. Counsel failed to raise in the direct appeal the claim that the instructions on premeditation and deliberation as well as express and implied malice were erroneous;

B. "[O]ther errors," including:

> 1. Appellate counsel did not claim that trial counsel failed to contact and interview Ruben Ramirez's attorney to learn whether he was to be a witness for the state before he filed a motion for new trial;
>
> 2. Appellate counsel did not challenge Justice Becker's presence on the Nevada Supreme Court panel reviewing petitioner's appeal based on the fact that, while serving as a district court judge, she issued a search warrant for petitioner's house;
>
> 3. Appellate counsel did not claim that evidence of Brady's prior bad acts was admissible on more theories than just identity;
>
> 4. Appellate counsel failed to include in the appendix a copy of a letter to the state putting the state on notice of the defense theory, thereby allowing the court to decide that the state did not act in bad faith in not preserving evidence;
>
> 5. Appellate counsel did not claim that trial counsel failed to obtain an expert witness to contradict the surprise testimony of Torrey Johnson in order to establish the prejudicial impact of Johnson's testimony about whether the fatal shot came from petitioner's gun before his filed a motion for new trial;
>
> 6. Appellate counsel failed to claim that prosecutorial misconduct occurred in the opening statements, closing arguments, and the penalty hearing;
>
> 7. Appellate counsel did not claim that the trial court improperly limited defense exploration of the relationships within the 18th Street gang to show that gang loyalty would lead witnesses in the gang to lie at trial in order to show that petitioner was being railroaded by the gang;
>
> 8. Appellate counsel failed to claim that the motion for mistrial based on the cross examination by the state of Jose Cribeiro regarding petitioners' fascination with and ownership of guns was improperly denied;
>
> 9. Appellate counsel failed to claim that improper cross examination commented on petitioner's right to remain silent;
>
> 10. Appellate counsel failed to raise a claim of cumulative error.

**Ground Three:** Petitioner was denied discovery of impeachment and exculpatory evidence by various law enforcement agencies in violation of the Fifth and Fourteenth Amendments. The items not disclosed or discovered included:

A. Ruben Ramirez's criminal activity for impeachment purposes;

B. A photograph of Brady's appearance at the time of his interview;

C. Evidence of previous "fishing trips" by Brady;

D. Torrey Johnson's handwritten notes;

**Ground Four**: The state failed to preserve evidence and investigate the case violating petitioner's rights under the Fifth and Fourteenth Amendments, including:

A. Testing of Mendoza's hands and clothing for gunpowder residue to show the fatal shot did not come from petitioner's gun;

B. The police crime scene investigator processed only the passenger side of Brady's truck;

C. The district attorney gave Brady permission to alter his truck after processing and before trial;

D. Detectives did not photograph Brady at his interview;

E. The state allowed Brady's truck to be altered and then objected at trial to testimony about the alterations;

F. Brady had engaged in previous marauding trips where the prosecutor represented he was unaware of conduct by Brady even closely associated with shooting someone;

G. Detective Becker engaged in a cover up to exonerate Brady by changing his testimony about Brady's handling of the gun;

H. The detectives did not interview Lorraine Mohr about her observations.

**Ground Five**: Petitioner's right guaranteed by the Fifth and Fourteenth Amendments were violated through prosecutorial misconduct.

A. The state utilized a demonstration gun during the expert's testimony of trajectories that had swastikas on it;

B. The prosecutor impugned defense questioning and strategies;

C. The prosecutor asked sarcastic and demeaning questions of Brady during redirect questioning;

D. The prosecutor referred to petitioner's former employment at Dillard's department store;

E. The prosecutor disparaged defense counsel.

**Ground Six:** Pretrial identification procedures were impermissibly suggestive in violation of the Fifth, Sixth and Fourteenth Amendments.

**Ground Seven:** Jury instructions on premeditation and deliberation and malice were faulty, trial counsel did not object to them, and appellate counsel did not raise the issue in the direct appeal in violation of the Fifth, Sixth and Fourteenth Amendments.

**Ground Eight:** As alleged above, the prosecutor committed misconduct, trial counsel did not object to these instances, and appellate counsel did not raise the issue in the direct appeal, violating petitioner's rights under the Fifth, Sixth and Fourteenth Amendments.

**Ground Nine:** The police department and the prosecutors treated petitioner disparately from identically or similarly situated persons made up of police officers who are charged with or implicated in criminal activity in violation of petitioner's right to equal protection under the Fourteenth Amendment.

**Ground Ten:** The jury instruction on premeditation and deliberation did not draw a rational distinction between first and second degree murder in its "instantaneous as successive thoughts of the mind" language in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.

**Ground Eleven:** In violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, cumulative error occurred during the course of the entire proceedings against petitioner as alleged herein, along with evidence not presented to the jury prejudiced petitioner.

**Ground Twelve:** Trial counsel did not move for a change of venue due to prejudicial pretrial publicity violating petitioner's rights under the Fifth, Sixth and Fourteenth Amendments.

**Ground Thirteen:** In violation of the Sixth and Fourteenth Amendments, the trial court abused its discretion by limiting the scope of the evidentiary hearing in the post-conviction proceedings.

**III. Discussion**

Respondents move to dismiss the federal habeas petition, asserting that many of the claims raised in the petition remain unexhausted. ECF No. 50. Petitioner has opposed the motion (ECF No. 55) and respondents did not file a reply.

A. Legal Standard

Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court remedies on a claim before presenting that claim to the federal courts. To satisfy this exhaustion requirement, the claim must have been fairly presented to the state courts completely through to the highest court available, in this case the Supreme Court of Nevada. *E.g., Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003)(*en banc*); *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003). In the state courts, the petitioner must refer to the specific federal constitutional guarantee and must also state the facts that entitle the petitioner to relief on the federal constitutional claim. *Shumway v. Payne*, 223 F.3d 983, 987 (9th Cir. 2000). That is, fair presentation requires that the petitioner present the state courts with both the operative facts and the federal legal theory upon which the claim is based. *E.g., Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005). The exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees. *See, Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55 (1991).

B. Argument

Respondents contend that although many of the claims outlined above were presented in the petition for post-conviction habeas corpus brought in the state district court, "the majority of the claims remain unexhausted." Motion to Dismiss, p. 2. Specifically, respondents assert the following ground remain unexhausted:

> 1:1(A) and all of its subclaims (1) through (6), 1:1(B), 1:1(C), 1:1(D), 1:1(F), 1:1(G), 1:1(H), 1:1(K), 1:1(L), 1:1(M) (beyond the allegation that Barry knew of Brady's statements to do a drive-by shooting), 1:1(N), 1:1(O), 1:1(P), 1:2(A), 1:2(B), 1:2(C), 1:2(D), 1:2(E), 1:2(F),

> 1:2(G), 1:2(H), 1:2(I), 1:2(J), 1:2(K), 1:2(L) (beyond the allegation that counsel failed to offer better instructions on premeditation, deliberation and mere presence), 1:2(M), 1:2(N), 1:2(O), 1:2(P), 1:2(Q), 1:2(R), 1:2(S), 1:2(T), 1:2(U), 1:2(V), 1:2(W), 1:2(X), 1:2(Y), 1:2(Z), 1:2(AA), 1:2(BB), 1:2(CC), 2(A) (beyond the allegation that appellate counsel did not raise the claim of inappropriate instructions on premeditation and deliberation), 2(B)(1)-(5), 2(B)(6) (beyond those allegations raised in post-conviction appeal claim 3(b)), 2(B)(7), 2(B)(9), 2(B)(10), 3(B), 3(D), 4(A)-4(H), 5(A)-5(E), 6, 7 (beyond the allegation that the premeditation and deliberation instruction's "instantaneous as successive thoughts of the mind" language was vague), 8 (beyond the allegation that appellate counsel failed to raise the claim of misconduct in the direct appeal briefing), 9, 10, 11 (beyond the narrower claim of cumulative error set forth in the postconviction appeal based on fewer cumulative claims), and 12

Motion to Dismiss, p. 15.

Petitioner counters that the claims are exhausted because they were presented to the Nevada Supreme Court as part of the appendix to the Appellant's Opening Brief in his post-conviction appeal which was repeatedly cited to in the arguments presented. Opposition to Motion to Dismiss, pp. 1-2, n 1. Petitioner argues that the Nevada Supreme Court must have considered all of his claims when it determined that a broader evidentiary hearing to further develop facts to support claims raised in the state post-conviction petition was unnecessary because they were "belied by the record." *See* Order of Affirmance, July 15, 2010, p. 4 (Exhibits, p. 80).[5]

Petitioner also argues that even if some of the claims are supported with additional facts or legal theories, so long as the basic claims were presented, the expansion of the argument does not render his claims unexhausted. He further suggests that because he was denied the opportunity to develop the facts in state court, it is only natural that his claims "might change as [they] progress through the justice system. Opposition, p. 4.

---

[5] Which exhibits are referenced in this citation is unclear. However, the index of exhibits provided by petitioner reveals this order is found at Ex. 26-394. Such incomplete or confusing citation to the records before this Court is not helpful.

C. Analysis[6]

1. *Incorporation by Reference*

Petitioner relies on the holdings of *Scott v. Schriro,* 567 F.3d 573 (9th Cir. 2009) and *Insyxiengmay v. Morgan,* 403 F.3d 657 (9th Cir. 2005) to support his contention that presentment of his claims in the appendix to his appellant brief is sufficient to properly present the claims to the Nevada Supreme Court for purposes of exhaustion because he gave that court an opportunity to remedy the errors, "whether or not that court took advantage of the opportunity," citing *Scott,* 567 F.3d at 583.

In both *Scott* and *Insyxiengmay*, appellant was allowed to incorporate by reference issues presented in an appendix but not argued in the appellate brief. *Scott v. Shiro*, 567 F.3d 573, 582 n. 8 (9th Cir. 2009); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668-69 (9th Cir. 2005). Nevada does not allow such a practice. "Parties shall not incorporate by reference briefs or memoranda of law submitted to the district court or refer the Supreme Court to such briefs or memoranda for the arguments on the merits of the appeal." Nev. R.App. P. 28(e)(2). Because incorporation by reference is a procedurally incorrect manner to present issues to the Nevada Supreme Court, it does not exhaust petitioner claims. *See Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056 (1989).[7]

Moreover, petitioner's case can be distinguished from these cited cases because Nevada, unlike Arizona in *Scott* and Washington in *Insyxiengmay*, does not require leave of court for a discretionary review, but rather allows an appeal as of right on denial of a state post-conviction petition. *See* Nevada Rules of Appellate Procedure, Rule 22 ("An application for an original writ of habeas corpus should

---

[6] It is of significance to the Court that respondents have not filed a reply brief and, therefore, make no effort to rebut petitioner's arguments. A failure to file opposing points and authorities is considered under this Court's local rules to be a concession as to the arguments presented. LR 7-2(d). While the rule does not specifically mention a reply or rebuttal, the principle logically holds true for those circumstances as well.

[7] One month before the court of appeals issued its opinion in *Insyxiengmay*, it ruled that a petitioner may not rely on his lower-court briefs and pleadings to present a federal claim to the state's highest court. *Castillo v. McFadden*, 399 F.3d 993, 999-1000 (9th Cir.2005). *Castillo* relies upon *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347 (2004), which held that a petitioner cannot rely upon a state appellate court reading the decision of the lower court to present federal claims.

be made to the appropriate district court. If an application is made to the district court and denied, the proper remedy is by appeal to the Supreme Court from the district court's order denying the writ."). Thus, petitioner's arguments in this regard are not persuasive. The claims were not exhausted by their inclusion in the appendix to the opening appellate briefs.

2. *Exhaustion Despite Variations in Fact or Theory*

"[S]o long as the "ultimate question for disposition' has remained the same in state and federal court, ... 'variations in the legal theory or factual allegations urged in its support' are entirely legitimate." *Robinson v. Schriro,* 595 F.3d 1086, 1102 n.14 (9th Cir.2010) (quoting *Picard v.Connor,* 404 U.S. 270, 277 (1971)), *cert. denied sub nom Ryan v. Robinson,* 131 S.Ct. 566 (2010); *accord Lopez v. Schriro,* 491 F.3d 1029, 1040 (9th Cir.2007); *McKinney v. Artuz,* 326 F.3d 87, 97 (2d Cir.2003); *Boyko v. Parke,* 259 F.3d 781, 788-89 (7th Cir.2001); *Weaver v. Thompson,* 197 F.3d 359, 364-65 (9th Cir.1999).

Petitioner argues that many of his claims are exhausted. The Court agrees. Although many of the arguments brought in this federal petition are more specific and provide more detail about the basis for the claims, the Nevada Supreme Court was fully and fairly advised of the federal nature and most specifics of the following claims in the appellant's various appellate briefs. The additional detail has not changed the substantive legal nature of the claims. *Luna v. Cambra* 306 F.3d 954, 965 (9th Cir. 2002) as amended by 311 F.3d 928 (9th Cir. 2002); *see Brown v. Myers,* 137 F.3d 1154, 1157 n. 3 (9th Cir. 1998); *see also Jones v. Hess*, 681 F.2d 688, 694 (10th Cir.1982). After an exhaustive review and comparison of the various appellate briefs and the instant claims, the Court finds, that the following grounds have been exhausted through fair presentation to the state's highest court:

Grounds: 1-1 subparts (A)(1)-(5), (D)-(E), (F)(1)-(2), (F)(4), (H)-(J), (M) and (O);
1-2 subparts (A), (D), (E), (F), (L)(1)-(4), (M) and (S);
2 subparts (A), (B)(6) and (B)(8);
3 subparts (A), (C) and (D);

4 subparts (A)-(C), (E) and (F);

10, 11 and 13.

The Court finds that all remaining grounds for relief are unexhausted including:

Grounds: 1-1 subparts (A)(6), (F)(3), (G), (K), (L), (N) and (P);

1-2 subparts (B), (C), (G)-(K), (L)(5), (N)-(R), (T)-(CC);

2 subparts (B)(1)-(5), B(7), (B)(9) and (B)(10);

3 subpart (B);

4 subparts (D), (G) and (H);

5 through 9 and 12 .

**IV. Petitioner's Mixed Petition**

A federal court may not entertain a habeas petition unless the petitioner has exhausted available and adequate state court remedies with respect to all claims in the petition. *Rose v. Lundy*, 455 U.S. 509, 510 (1982). A “mixed” petition containing both exhausted and unexhausted claims is subject to dismissal. *Id.* Because the Court finds that the petition is a “mixed petition,” containing both exhausted and unexhausted claims, petitioner has options:

1. He may submit a sworn declaration voluntarily abandoning the unexhausted claims in his federal habeas petition, and proceed only on the exhausted claims;

2. He may return to state court to exhaust his unexhausted claims, in which case his federal habeas petition will be denied without prejudice; or

3. He may file a motion asking this Court to stay and abey his exhausted federal habeas claims while he returns to state court to exhaust his unexhausted claims.

*See Rose v. Lundy*, 455 U.S. 509, 510 (1982); *Rhines v. Weber*, 544 U.S. 269 (2005); *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2002); *King v. Ryan*, 564 F.3d 1133 (9th Cir. 2009).

Petitioner’s failure to choose any of the three options listed above, or seek other appropriate relief from this Court, will result in his federal habeas petition being dismissed. Petitioner is advised to carefully consider the limitations periods for filing federal habeas petitions contained in 28 U.S.C.

§ 2244(d), as those limitations periods may have a direct and substantial effect on whatever choice he makes regarding his petition.

**IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 50) is **GRANTED IN PART AND DENIED IN PART.** The Court finds that Grounds: 1-1 subparts (A)(6), (F)(3), (G), (K), (L), (N) and (P);1-2 subparts (B), (C), (G)-(K), (L)(5), (N)-(R) and (T)-(CC); 2 subparts (B)(1)-(5), B(7), (B)(9) and (B)(10); 3 subparts (B); 4 subparts (D), (G) and (H); and Grounds 5 through 9 and 12 are unexhausted, having not been fairly presented to the Nevada Supreme Court.

**IT IS FURTHER ORDERED** that petitioner shall have **thirty (30) days** to either: **(1)** inform this Court in a sworn declaration that he wishes to formally and forever abandon the unexhausted grounds for relief in his federal habeas petition and proceed on the exhausted grounds; **OR (2)** inform this Court in a sworn declaration that he wishes to dismiss this petition without prejudice in order to return to state court to exhaust his unexhausted claims; **OR (3)** file a motion for a stay and abeyance, asking this Court to hold his exhausted claims in abeyance while he returns to state court to exhaust his unexhausted claims. If petitioner chooses to file a motion for a stay and abeyance, or seek other appropriate relief, respondents may respond to such motion as provided in Local Rule 7-2.

**IT IS FURTHER ORDERED** that if petitioner elects to abandon his unexhausted grounds, respondents shall have **thirty (30) days** from the date petitioner serves his declaration of abandonment in which to file an answer to petitioner's remaining grounds for relief. Petitioner shall thereafter have **twenty (20) days** following service of respondents' answer in which to file a reply.

**IT IS FURTHER ORDERED** that if petitioner fails to respond to this order within the time permitted, this case may be dismissed.

Dated this 28 day of January, 2013.

UNITED STATES DISTRICT JUDGE